STATE OF NORTH CAROLINA v. TIMOTHY EARL BLACKWELL

No. 490PA04

(Filed 19 August 2005)

**1. Appeal and Error— general supervisory authority— Supreme Court's authority to review Court of Appeals determination of motion for appropriate relief**

Although defendant contends our Supreme Court lacks jurisdiction to review the Court of Appeals determination of his motion for appropriate relief he filed in that court where he successfully argued that his aggravated sentence was imposed in violation of the United States Constitution based on the fact that N.C.G.S. § 15A-1422(f) provides that decisions of the Court of Appeals on motions for appropriate relief that embrace matters set forth in N.C.G.S. § 15A-1415(b) are final and not subject to further review by appeal, certification, writ, motion, or otherwise, our Supreme Court's general supervisory authority under Article IV, Section 12, Clause 1 of the North Carolina Constitution permits review of this matter because a prompt and definitive resolution of this issue is necessary to ensure the continued fair and effective administration of North Carolina's criminal courts.

STATE v. BLACKWELL

[359 N.C. 814 (2005)]

## 2. Sentencing— aggravating factors—unilateral finding by trial court—structural error

The trial court committed structural error in a second-degree murder, habitual impaired driving, and felonious assault with a deadly weapon inflicting serious injury case by finding the aggravating factor under N.C.G.S. § 15A-1340.16(d)(12) that defendant committed the offense while on pretrial release on another charge even though aggravating factors need not be alleged in an indictment, and the case is remanded for resentencing, because: (1) the trial court violated *Blakely*, 542 U.S. 296 (2004), by imposing an aggravated sentence that exceeded the statutory maximum after making a unilateral finding that defendant was on pretrial release for another charge; and (2) although the State contends the sentence should be upheld under a harmless error analysis, *Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and therefore reversible per se.

Justice MARTIN dissenting.

Chief Justice LAKE and Justice NEWBY joining in the dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of an unpublished decision of the Court of Appeals (Wynn, J., with Hunter, J., concurring, and Tyson, J., concurring in the result), 166 N.C. App. 280, 603 S.E.2d 168 (2004), finding no prejudicial error in defendant's trial but remanding for resentencing after consideration of defendant's motion for appropriate relief from judgments entered on 13 November 2002 by Judge Orlando F. Hudson, Jr. in Superior Court, Durham County. On 10 February 2005, defendant filed a motion for appropriate relief in this Court. Heard in the Supreme Court 15 March 2005.

*Roy Cooper, Attorney General, by Robert C. Montgomery and Patricia A. Duffy, Assistant Attorneys General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender; and Marilyn G. Ozer for defendant-appellee.*

EDMUNDS, Justice.

In this case, we must determine whether the trial court improperly imposed an aggravated sentence on defendant in violation of the

United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). Because we conclude that the trial court committed structural error by finding the aggravating factor, we affirm the decision of the Court of Appeals and remand defendant's case for resentencing.

On 27 February 1997, Sherry and Greg Dail made plans to run errands together in Durham with their three young children: Megan, age four; Austin, age two; and Joshua, age one. Because Sherry had to go to work later that afternoon, they drove separate vehicles. Sherry led the way in a 1992 Mercury Sable and Greg followed with the children in a 1989 Dodge Caravan.

The Dails drove south on Guess Road. As the two vehicles crossed the Eno River Bridge and approached the intersection of Guess Road and Rose of Sharon Road, defendant Timothy Earl Blackwell, traveling north on Guess Road, crossed the center line, sideswiped Sherry's car, and collided with Greg's van. Megan Dail was killed as a result of the collision and the other members of the family all suffered severe injuries.

Defendant's erratic and dangerous driving was observed by several witnesses in the moments leading up to the accident. At approximately 11:00 that morning, defendant was seen driving north on Guess Road in his red pickup truck at speeds estimated by an observer to be as high as seventy-five miles per hour. After running a red light and swerving back and forth across the road, defendant's truck jumped a curb, knocked over several trash cans and a mailbox, then crossed several lanes and headed directly into oncoming traffic. After managing to get back into a northbound lane, defendant repeatedly crossed the center line again, forcing several cars off the road. Defendant hit the Dails' oncoming vehicles as he approached Rose of Sharon Road.

Defendant admitted that he had consumed both cocaine and heroin the night before and that he had drunk beer between 9:00 and 10:30 that morning. At the time of the accident, defendant's blood alcohol content was 0.130 grams of alcohol per one hundred milliliters of whole blood and his blood tested positive for cocaine metabolites and opiates. Police officers found hypodermic needles and beer cans in defendant's truck.

Defendant was indicted for first-degree murder, four counts of assault with a deadly weapon inflicting serious injury, habitual

impaired driving, driving while license revoked, driving left of center, possession of drug paraphernalia, and possession of an open container. Defendant pleaded not guilty to the murder and assault charges and guilty to the rest. The jury convicted defendant of first-degree murder under the felony murder rule, one count of assault with a deadly weapon inflicting serious injury, and three counts of assault with a deadly weapon. The Court of Appeals ordered a new trial. *State v. Blackwell*, 135 N.C. App. 729, 522 S.E.2d 313 (1999). The State appealed and this Court remanded the case to the Court of Appeals on the basis of our holding in *State v. Jones*, 353 N.C. 159, 538 S.E.2d 917 (2000). *State v. Blackwell*, 353 N.C. 259, 538 S.E.2d 929 (2000) (per curiam). The Court of Appeals then remanded the case to the trial court. *State v. Blackwell*, 142 N.C. App. 388, 542 S.E.2d 675 (2001).

Defendant was retried and convicted of second-degree murder, habitual impaired driving, and felonious assault with a deadly weapon inflicting serious injury, along with several misdemeanors not pertinent to this appeal. As to each of these felony convictions, the trial court found the single statutory aggravating factor that "defendant committed the offense while on pretrial release on another charge." N.C.G.S. § 15A-1340.16(d)(12) (2003). The trial court also found as to each conviction the statutory mitigating factors that defendant entered or completed a drug treatment program, *id.* § 15A-1340.16(e)(16) (2003), that defendant supports his family, *id.* § 1340.16(e)(17) (2003), and that defendant has a community support system, *id.* § 1340.16(e)(18) (2003). In addition, the trial court found three nonstatutory mitigating factors, including that defendant has been a model prisoner while in custody, received his GED, and is remorseful. After determining that the aggravating factor outweighed the mitigating factors, the trial court entered separate judgments for each offense and sentenced defendant to consecutive aggravated terms of 353 to 461 months for the second-degree murder conviction, 26 to 32 months for the habitual impaired driving conviction, and 66 to 89 months for the assault with a deadly weapon inflicting serious injury conviction.

Defendant again appealed to the Court of Appeals. While the case was pending on appeal, defendant filed a motion for appropriate relief (MAR) in that court contending that the trial court's imposition of an aggravated sentence violated the United States Supreme Court holding in *Blakely*. Under *Blakely*, any factors used to aggravate a sentence must be found by a jury beyond a reasonable doubt or

admitted by the defendant. 542 U.S. at —, 159 L. Ed. 2d at 413-14. The Court of Appeals found no prejudicial error in defendant's trial, but granted defendant's MAR and remanded his case for resentencing consistent with *Blakely*. *State v. Blackwell*, 166 N.C. App. 280, 603 S.E.2d 168, 2004 N.C. App. LEXIS 1618 (Sept. 7, 2004) (No. COA03-793) (unpublished).

On 2 December 2004, this Court allowed the State's petitions for writ of supersedeas and for discretionary review of the Court of Appeals decision, but denied defendant's petition for discretionary review. On 10 February 2005, defendant filed a MAR with this Court alleging that the trial court could not impose an aggravated sentence because the aggravating factor was not alleged in the indictments. We ordered that this MAR be considered along with the other issues on appeal.

[1] As a preliminary matter, we consider defendant's contention that this Court lacks jurisdiction to review the Court of Appeals determination of the MAR he filed in that court. In that MAR, defendant successfully argued pursuant to N.C.G.S. § 15A-1415(b)(4) that his aggravated sentence was imposed in violation of the United States Constitution. As defendant correctly points out, N.C.G.S. § 15A-1422(f) provides that "[d]ecisions of the Court of Appeals on motions for appropriate relief that embrace matter set forth in G.S. 15A-1415(b) are final and not subject to further review by appeal, certification, writ, motion, or otherwise." N.C.G.S. § 15A-1422(f) (2003). However, we have resolved this issue in our opinion in *State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005).

> Because a prompt and definitive resolution of this issue is necessary to ensure the continued fair and effective administration of North Carolina's criminal courts, we exercise the supervisory authority of this Court, which is embodied in Article IV, Section 12, Clause 1 of the North Carolina Constitution, and review the opinion of the Court of Appeals. In so doing, we note that N.C.G.S. § 15A-1422(f) cannot restrict this Court's constitutionally granted power to "issue any remedial writs necessary to give it general supervision and control over the proceedings of the other courts."

*Allen*, 359 N.C. at 429, 615 S.E.2d at 260, (quoting N.C. Const. art. IV, § 12, cl. 1). The case at bar, much like *Allen* and *State v. Speight*, 359 N.C. 602, 614 S.E.2d 262 (2005), addresses immediately important aspects of *Blakely's* application to North Carolina sentencing law.

Accordingly, we conclude that our general supervisory authority permits our review of this matter.

**[2]** We now consider whether the imposition of an aggravated sentence violated defendant's Sixth Amendment right to a trial by jury as interpreted by the United States Supreme Court in *Blakely*. In *Blakely*, the Supreme Court held that the Sixth Amendment prohibits the trial court from finding aggravating factors unilaterally and using them to impose a sentence in excess of the "statutory maximum." 542 U.S. at ——, 159 L. Ed. 2d at 413-14. The "statutory maximum" is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id.* at ——, 159 L. Ed. 2d at 413. Accordingly, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *Allen*, 359 N.C. at 437, 615 S.E.2d at 265, (citing *Blakely*, 542 U.S. at ——, 159 L. Ed. 2d at 412-14; *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455 (2000)). That holding applies to defendant's case, which was on direct appeal when *Blakely* was issued. *Griffith v. Kentucky*, 479 U.S. 314, 322-23, 93 L. Ed. 2d 649, 658 (1987).

The record reveals that the trial court violated *Blakely* by imposing an aggravated sentence that exceeded the statutory maximum after making a unilateral finding that defendant was on pretrial release for another charge when he committed the instant offense. N.C.G.S. § 15A-1340.16(d)(12). Although the State argues that defendant's sentence should nevertheless be upheld under a harmless error analysis, we held in *Allen* that "*Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se." Allen*, 359 N.C. at 444, 615 S.E.2d at 269. Consequently, defendant's case must be remanded to the trial court for resentencing consistent with *Blakely* and *Allen*.

Finally, defendant contends that the trial court lacked jurisdiction to sentence him beyond the statutory maximum because the indictments failed to allege the aggravating factor that defendant was on pretrial release for another charge at the time of the offense. Pursuant to this Court's opinion in *Allen*, and consistent with our holding in this case, we conclude that aggravating factors need not be alleged in an indictment. *Id.* at 438, 615 S.E.2d at 265. "[T]his Court [previously has] concluded that 'the Fifth Amendment [does] not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment.' " *Id.*

(quoting *State v. Hunt*, 357 N.C. 257, 272, 582 S.E.2d 593, 603, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003)). Defendant's motion for appropriate relief is denied.

MODIFIED AND AFFIRMED.

Justice MARTIN dissenting.

In *State v. Allen*, issued last month, this Court held that "*Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se*." 359 N.C. 425, 615 S.E.2d 256, —— (July 1, 2005) (No. 485PA04). Three justices dissented, reasoning that controlling precedents of the United States Supreme Court compel the conclusion that *Blakely* errors, like the vast majority of both constitutional and non-constitutional errors, are subject to harmless-error analysis. *See id.* at 452, 615 S.E.2d at —— (Martin, J., concurring in part and dissenting in part). A week later, the Arizona Supreme Court, examining the same body of law that we analyzed in *Allen*, unanimously held that *Blakely* errors are not structural errors subject to *per se* reversal. *State v. Henderson*, —— Ariz. ——, —— P.3d —— (No. CR-04-0442-PR) (July 8, 2005). In issuing this opinion, the Arizona Supreme Court joined the growing chorus of state and federal courts to conclude that *Blakely* errors are subject to harmless-error review. *See Allen*, 359 N.C. at 467 n.13, 615 S.E.2d at —— n.13 (Martin, J., concurring in part and dissenting in part) (citing numerous cases); *see also Milligrock v. Alaska*, —— P.3d ——, —— (No. 1999) (Alaska Ct. App., July 29, 2005), *available at* http://www.state.ak.us/courts/ops/ap-1999.pdf.

Like *State v. Speight*, 359 N.C. 602, 614 S.E.2d 262 (July 1, 2005) (No. 491PA04), the instant case perfectly illustrates the deleterious consequences of the majority's categorical approach to *Blakely* errors. The sole aggravating factor in the instant case was the statutory (d)(12) aggravator, "defendant committed the offense while on pretrial release on another charge." N.C.G.S. § 15A-1340.16(d)(12) (2004). He did.

At no stage of these proceedings has there been any dispute over this simple, incontrovertible fact. At trial, former State Trooper S.D. Davis testified that he arrested defendant on 4 May 1996 in Pender County and charged him with driving while impaired (DWI) and driving while license revoked. On direct examination, the District Attorney elicited the following testimony from Trooper Davis:

**STATE v. BLACKWELL**

[359 N.C. 814 (2005)]

Q: Looking at the front of the citation. Do you see a judgment in the area designated for judgment.

A: No, I do not.

Q: And that with respect to the driving while impaired charge, isn't it?

A: Yes.

Q: With respect to the driving while license revoked charge, do you see a judgment?

A: No, I do not.

Q: If there is no judgment would it then have been pending at the time of February 27 of 1997?

A: Yes, sir.

The state then entered into evidence the citation completed by Trooper Davis. It is readily apparent from Trooper Davis's testimony and the physical evidence of the citation itself that defendant's charges for DWI and driving while license revoked were pending at the time of the fatal collision that gave rise to the instant charges. Defendant failed to object to the colloquy set out above and failed to present any evidence or argument to rebut Trooper Davis's testimony that defendant was on pretrial release at the time he committed the present offenses.

Moreover, when asked by the trial court whether he "wish[ed] to be heard as to sentencing," the District Attorney responded as follows:

Yes, sir. I think that with respect to this single aggravating factor, the defendant committed the offense while on pretrial release for another charge, that being another DWI in Pender County as described by Trooper Davis, if the Court looks at this defendant's history, that's a pretty typical pattern over the last twenty-five years that this defendant has been involved with driving offenses and other violations.

Neither during this colloquy nor at any point during sentencing did defendant object to the District Attorney's assertion that defendant was on pretrial release at the time of the instant offenses. Nor did defendant present any contrary evidence or argue that the (d)(12) aggravator should not be found or that it lacked aggravating value.

Indeed, defendant's only arguments at sentencing related to the presence of various statutory and non-statutory *mitigating* factors, all of which the trial court found to exist.

Taken together, Trooper Davis's testimony, the 4 May 1996 citation, defendant's failure to object, and defendant's failure to present any arguments or evidence contesting the sole aggravating factor constitute uncontroverted and overwhelming evidence that defendant committed the crime while on pretrial release for another offense. In addition, the date of defendant's pretrial release for charges then pending in Pender County is a matter of *public record.*[1] There can be no serious question that if the instant case were remanded to the trial court for a jury determination of the sole aggravating factor presented, the state would again offer evidence in support of that aggravator in the form of official state documents and the testimony of state record-keepers.

Defendant received a fair trial at which a jury of his peers determined beyond a reasonable doubt that he was guilty of habitual impaired driving, driving while license revoked, possession of drug paraphernalia, transporting an open container, driving left of center, driving while impaired, felonious assault with a deadly weapon inflicting serious injury, misdemeanor assault with a deadly weapon, and second-degree murder for recklessly causing the death of a four-year-old girl. All of the facts essential to defendant's punishment—save one—were submitted to a jury and found beyond a reasonable doubt. The only essential fact *not* found by the jury was the sole aggravating factor, that defendant committed the offense while on pretrial release for another crime, a matter of public record that was found by a judge based on uncontroverted and overwhelming evidence.

---

1. Parenthetically, the dates surrounding defendant's periods of pretrial release are precisely the type of fact of which courts may take judicial notice. Rule 201 of the North Carolina Rules of Evidence permits courts to take judicial notice of facts that are "not subject to reasonable dispute in that [they] [are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. R. Evid. 201(b). As a matter of public record, the dates of defendant's pretrial release are "not subject to reasonable dispute." *Id.* I acknowledge that in criminal cases a jury must be instructed "that it may, but is not required to, accept as conclusive any fact judicially noticed." N.C. R. Evid. 201(g). I also acknowledge that our rules of evidence do not trump the requirements of the Sixth Amendment as articulated in *Blakely.* Nonetheless, it is noteworthy that the aggravating factor at issue here— whether defendant was on pretrial release at the time of the instant offenses—is not the sort of factual determination that has traditionally been reserved exclusively for jury determination.

While the judicial fact-finding in the instant case undeniably violated the Sixth Amendment rule subsequently established by *Blakely v. Washington*, it is equally obvious that this particular constitutional error had no effect on the sentence defendant actually received. A central purpose of the harmless-error doctrine is to "block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 709 (1967). To remand for resentencing so that a jury may go through the motions of reconfirming a simple and uncontroverted matter of public record "accomplishes nothing from a practical perspective, elevates form over substance, and unnecessarily undermines the salutary objectives that are undeniably effectuated by application of harmless-error review." *Allen*, 359 N.C. at 473, 615 S.E.2d at —— (Martin, J., concurring in part and dissenting in part).

I respectfully dissent.

Chief Justice LAKE and Justice NEWBY join in this dissenting opinion.